UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re SKYLINE CONCRETE FLOOR
CORP.,

     Debtor.

_____/

901 L.L.C., a Michigan limited liability
company, and WINTER P.L.C., a Michigan      Case No. 07-14580
professional limited liability company,      Honorable Patrick J. Duggan

     Plaintiffs/Counter-Defendants,      Bankr. Case No. 07-54154
     Chapter 11
v.      Honorable Marci B. McIvor

SKYLINE CONCRETE FLOOR CORP.,      Adversary Proc. No. 07-6575

     Defendant/Counter-Plaintiff,

and

WINTER & ASSOCIATES, P.L.C., a
Michigan professional corporation, and
STEPHEN D. WINTER,

     Third-Party Defendants.

_____/

**OPINION AND ORDER GRANTING IN PART 901'S
APPLICATION FOR LITIGATION EXPENSES**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on July 10, 2008.

PRESENT:      THE HONORABLE PATRICK J. DUGGAN
                     U.S. DISTRICT COURT JUDGE

On January 8, 2008, this Court granted Plaintiff 901, L.L.C.'s ("901") Motion to

Withdraw Reference of this adversary proceeding to the Bankruptcy Court. This adversary proceeding, involving breach of contract, fraud, and slander of title claims, was tried before a jury from April 9 to April 15, 2008. On April 17, 2008, the jury returned a verdict in favor of 901, awarding $79,000.00 in damages for breach of contract, $2,300.00 in actual damages and $40,000.00 in exemplary damages for fraud, and $72,500.00 in exemplary damages for slander of title. Although the jury found that Defendant Skyline Concrete Floor Corp. ("Skyline") maliciously filed a false construction lien on 901's property, the jury did not award any actual damages to 901 for Skyline's slander of title. At trial, the parties agreed that they would allow the Court to decide the appropriate award of litigation expenses for the slander of title claim. Presently before the Court is 901's Application for Litigation Expenses, in which 901 requests an award of $467,367.97[1] in litigation expenses. Skyline has responded to 901's application, to which 901 has replied. On June 18, 2008, this Court sent a notice informing the parties that it is dispensing with oral argument on 901's application. *See* E.D. Mich. LR 7.1(e)(2).

**I. Background**

This case started as a simple contract dispute between 901 and Skyline. In late spring and early summer of 2005, 901 and Skyline entered into two contracts, wherein 901, as owner of an office building located at 901 Livernois Street in Ferndale, Michigan,

---

[1]901 originally requested $470,130.47 in litigation expenses. 901, however, filed a supplement to its application informing the Court that it is seeking $467,367.97 in litigation expenses.

hired Skyline to install "architectural" concrete floors for a sum of $25,000.00, and to demolish and then replace a parking lot, driveway approaches, and sidewalks for a sum of $15,800.00. Skyline then installed the concrete floors and the parking lot, driveway approaches, and sidewalks. 901 was dissatisfied with Skyline's work and sued Skyline for breach of contract in the Oakland County Circuit Court on June 16, 2006.

Skyline responded to 901's lawsuit by filing a construction lien on 901's property in the amount of $23,557.10, which included $10,111.10 Skyline claimed it was owed under its contract with 901 and $13,446.00 in "extras." Skyline also filed a counter-complaint seeking foreclosure on the construction lien. 901 then filed its first amended complaint, which added a claim against Skyline for slander of title. 901's slander of title claim alleges that Skyline filed the claim of lien "in bad faith, and with the intent to oppress, intimidate and harass [P]laintiffs." (Dfts.' Mot. Ex. 6, Pls.' First Am. Compl. ¶ 31.) Discovery proceeded. 901 claims that "Skyline resorted to a series of tactics to drive up the litigation costs." (901's Br. at 19.) For example, according to 901, it noticed 16 depositions, 13 of which involved individuals who Skyline had identified as witnesses it would call at trial, but Skyline never called any of these witnesses. (*Id.* at 10.)

In June 2007, 901 filed a fraud claim against Skyline, after 901 discovered that Skyline had used inadequate materials when it constructed the parking lot. 901's fraud claim was later consolidated with its breach of contract and slander of title action. Trial was then scheduled in the Oakland County Circuit Court for July 30, 2007. In the meantime, Skyline's president, Paul Fortuna, Sr., entered into a transaction with his son, Paul Fortuna, Jr., which, according to 901, rendered Skyline insolvent. Ten days before

3

the scheduled date for trial, on July 20, 2007, Skyline initiated a bankruptcy proceeding in the Bankruptcy Court for the United States District Court for the Eastern District of Michigan pursuant to Chapter 11 of the Bankruptcy Code. Skyline's filing of the bankruptcy petition automatically stayed the lawsuit between 901 and Skyline in the Oakland County Circuit Court. *See* 11 U.S.C. § 362.

On October 24, 2007, 901 initiated this adversary proceeding asserting claims identical to those asserted in its state court lawsuit. After unsuccessfully seeking to lift the automatic stay imposed as a result of Skyline's filing of a bankruptcy petition, 901 moved this Court to withdraw the reference to the bankruptcy court. On January 8, 2008, this Court withdrew the reference to the bankruptcy court. The Court held a jury trial from April 9, 2008 through April 15, 2008. On April 17, 2008, the jury returned a verdict in favor of 901 against Skyline, awarding $79,000.00 in damages for breach of contract, $2,300.00 in actual damages and $40,000.00 in exemplary damages for fraud, and $72,500.00 in exemplary damages for slander of title. The jury did not award any actual damages for 901's slander of title claim.

## II. Discussion

In Michigan, "[l]itigation costs, including attorney fees, have been held to constitute special damages recoverable in slander of title cases." *B&B Inv. Group v. Gitler*, 229 Mich. App. 1, 13-14, 581 N.W. 2d 17, 22 (1998)(citations omitted); MICH. COMP. LAWS §§ 565.108, 600.2907a (providing for attorney fees and costs as damages for statutory slander of title claims). Recoverable attorney fees must be reasonable, *see B&B Inv. Group*, 229 Mich. App. at 16, 581 N.W. 2d at 23, and this Court has discretion in

4

determining the appropriate amount of litigation costs awarded for slander of title. *See id.* at 11, 581 N.W. 2d at 21.

Notwithstanding the less-than-civil and prolix exchange between the parties in their briefs, the Court believes that the issue to be resolved in 901's application for litigation expenses is simple: what is the reasonable amount of such litigation expenses, including attorney fees. *See id.* In determining whether the requested amount of attorney fees is reasonable under Michigan law, a court should consider the following factors:

> (1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client.

*Woods v. Detroit Auto Inter-Ins. Exch.*, 413 Mich. 573, 588, 321 N.W. 2d 635, 661 (1982)(citing *Crawley v. Schick*, 48 Mich. App. 728, 737, 211 N.W. 2d 217, 222 (1973)). A court is not limited to these factors in making its determination and "need not detail its findings as to each specific factor considered." *Id.*

With respect to the first factor, 901 had four attorneys involved in the prosecution of its slander of title claim in the Oakland County Circuit Court, the Eastern District of Michigan Bankruptcy Court, and this Court: Ms. Cheryl Bush of Bush, Seyferth Kethledge & Paige, PLLC ("BSKP"); Mr. Stephen of Winter of Winter, PLC; Ms. Nicole Muscatelli of Winter, PLC; and Mr. Robert A. Peurach. In addition, Ms. Julie M. Miller, a paralegal at BSKP, and Ms. Elizabeth F. Kruckemeyer, a paralegal at Winter, PLC, were involved in the prosecution of 901's slander of title claim. Having reviewed each of these individual's curriculum vitae, which are attached to 901's application as exhibit 13,

the Court is satisfied, based on the professional standing and experience of the attorneys and paralegals who were involved in the prosecution of 901's slander of title claim, that the hourly rates that each of these individuals charges was reasonable.

As to the second factor, "the skill, time and labor involved," 901 has attached to its application the billing entries generated by the law firms whose attorneys and paralegals were involved in prosecuting 901's slander of title claim. (901's Br., Exs. 2-4; *see also* Ex. 1.) From these billing entries, it is clear that the attorneys and paralegals involved with the prosecution of 901's slander of title claim expended a substantial amount of time and labor. Therefore, the second factor weighs in favor of 901.

This Court believes that the third factor – "the amount at issue and the results achieved" – is particularly relevant to the instant dispute. Skyline argues that the Court should consider the amount of time 901 spent on its slander of title claim at trial in comparison to its breach of contract claim in determining a reasonable amount of litigation expenses. This Court agrees with Skyline. 901 spent the majority of its time at trial attempting to prove that Skyline breached its contract with 901. It was apparent to this Court that 901's slander of title claim was collateral to its breach of contract claim. Furthermore, the Court notes that the jury declined to award 901 any actual damages for Skyline's slander of title, suggesting that the construction lien did not dissuade a third-party from purchasing 901's property or prevent 901 from engaging in any transaction relating to its property. Therefore, this Court believes that the third factor weighs in favor of a reduction of 901's attorney fees.

The fourth and fifth factors are related in the current dispute. While the Court does

6

not believe that the prosecution of 901's slander of title claim should have been exceptionally difficult,[2] 901 argues that Skyline used the construction lien as leverage throughout this litigation and engaged in tactics that unnecessarily prolonged this litigation, which lasted almost two years and preoccupied the judges in three separate courts.  For example, 901 describes a number of tactics employed by Skyline during discovery that needlessly drove up the costs of this litigation, including 901's prosecution of its slander of title claim.  (*See* 901's Br. at 6-15.)  Skyline never refutes 901's assertions.  Moreover, as indicated above, 901 has attached the billing entries of the law firms whose attorneys and paralegals were involved in prosecuting 901's slander of title claim, as well as the invoices related to the various costs incurred in prosecuting its slander of title claim.  (901's Br., Exs. 2-5.)  Therefore, the Court believes that the fourth and fifth factors weigh in favor of 901.

The final factor – "the nature and length of the professional relationship with the client" – is also particularly relevant to this dispute.  Skyline asserts that Ms. Bush's and Mr. Winter's trusts are the sole members of 901.  (*See* Skyline's Resp. Br. at 1.)  Mr. Winter's trial testimony confirms that his trust is a one half owner of 901.  (*See* 4/15/08 Trial Tr. at 8.)  Moreover, it was revealed during trial that Mr. Winter is the manager and sole officer of 901.  (*Id.* at 98.)  Therefore, it appears that Mr. Winter, and maybe Ms.

---

[2]As Skyline elicited during its cross-examination of Mr. Winter at trial, its construction lien could have been "bonded over," or in other words, removed easily and inexpensively.  (Skyline's Resp. Br. 2-3 (citing 4/15/08 Trial Tr. at 96-97).)  While the Court finds Skyline's argument about the simplicity of the removing its lien disingenuous, the Court notes that Skyline could have also removed its lien very easily and inexpensively.

Bush, had personal interests in this litigation, or at least interests that went beyond merely advocating on behalf of 901. Consequently, this Court believes that the nature of the relationship between 901 and its attorneys weighs in favor of Skyline.

The Court, having considered all of the above-mentioned factors, will award 901 $150,000.00 in litigation costs for Skyline's slander of title.

Accordingly,

**IT IS ORDERED** that 901's Application for Litigation Expenses is **GRANTED IN PART**.

**IT IS FURTHER ORDERED** that 901 is awarded $150,000.00 in litigation expenses for Skyline's slander of title.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
Robert A. Peurach, Esq.
Stephen D. Winter, Esq.
Cheryl A. Bush, Esq.
Debra D. Pevos, Esq.
John T. Peters, Jr., Esq.
Patricia N. Walter, Esq.